# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 06-CV-3682 (JFB) (AKT)

————————————

## MARYELLEN HUMPHREY,

Plaintiff,

VERSUS

## COUNTY OF NASSAU,
JOHN FITZWILLIAM, individually and in his official capacity,
PAUL NAPOLI, individually and in his official capacity,
JAMES H. LAWRENCE, individually and in his official capacity,
JAMES GARSIDE, individually and in his official capacity,
SEAN FINNEGAN, individually and in his official capacity, and
RICHARD MESSINA, individually and in his official capacity,

Defendants.

————————————

**MEMORANDUM AND ORDER**
March 30, 2009

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Maryellen Humphrey ("plaintiff" or "Humphrey") brought this action on July 27, 2006 against defendants County of Nassau ("the County"), John Fitzwilliam ("Fitzwilliam"), individually and in his official capacity as a Commanding Officer of the Emergency Ambulance Bureau of the Nassau County Police Department ("EAB"), Paul Napoli ("Napoli"), individually and in his official capacity as a Deputy Commanding Officer of the same, James H. Lawrence ("Lawrence"), individually and in his official capacity as the Commissioner of the Nassau County Police Department, James Garside ("Garside"), individually and in his official capacity as Deputy Chief of Patrol for the same, Sean Finnegan ("Finnegan"), individually and in his official capacity as an ambulance medical technician ("AMT") coordinator for the EAB and Richard Messina ("Messina"), individually and in his official capacity as an AMT supervisor for the same (collectively, "defendants"), alleging that defendants discriminated against her on the basis of gender during her employment at the EAB by subjecting her to disparate treatment

on the basis of her gender, a hostile work environment, and retaliatory acts for reporting said discrimination to the Nassau County Equal Employment Office ("NCEEO"). Against the County, plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL"). Plaintiff also sues the individual defendants, pursuant to NYSHRL, New York Executive Law § 296(6). Finally, plaintiff brings a claim against all of the defendants, pursuant to 42 U.S.C. § 1983 ("Section 1983"), for the alleged deprivation of the rights, privileges and immunities secured to her by the Fourteenth Amendment to the Constitution of the United States.[1] Plaintiff seeks compensatory and punitive damages for all claims. Jurisdiction over plaintiff's state law claims is appropriate under 28 U.S.C. § 1331.

Defendants now move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, with the exception of the NYSHRL claim against the County and the Section 1983 claim against the individual defendants in their official capacities, the Court concludes, after carefully reviewing the record in this case, viewing all facts in the light most favorable to plaintiff and drawing all reasonable inferences therefrom in plaintiff's favor, that disputed issues of material fact preclude summary judgment with respect to plaintiff's federal and state claims against the County and the individual defendants.

I. BACKGROUND

A. Facts

The facts relevant to the instant motion are set forth in the Discussion section *infra*. They are taken from the parties' depositions, affidavits, exhibits, and from the parties' respective Rule 56.1 statement of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

B. Procedural History

Plaintiff filed this action on July 26, 2007. Defendants answered the complaint on November 13, 2006 and filed the instant motion on August 25, 2008. Plaintiff submitted her opposition on December 8, 2008. Defendants submitted their reply on December 19, 2008. Oral argument was held on January 9, 2009. The Court has fully considered the submissions of the parties.

---

[1] As an initial matter, the Section 1983 claims that are asserted against the individual defendants in their official capacities are duplicative of the municipal liability claim lodged against the County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), discussed *infra*. This is because Section 1983 actions against officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also, e.g., Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality) (citing *Kentucky*, 473 U.S. at 165-66). Thus, the Section 1983 claim against the individual defendants in their *official* capacities do not survive summary judgment. However, as discussed *infra*, the Section 1983 claim against the individual defendants in their *individual* capacities do survive summary judgment.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now

beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

## III. Discussion

Plaintiff alleges, under Title VII, that defendants treated her in an adverse and disparate manner in the terms and conditions of her employment based on gender, subjected her to a hostile work environment on the basis of her gender, and further took retaliatory action against her when she reported the alleged discrimination to Garside and the NCEEO. Plaintiff also asserts claims under Section 1983 and the NYSHRL based upon the same alleged conduct.[2] The Court examines each claim in turn.

### A. Disparate Treatment

Plaintiff claims that defendants discriminated against her based on her gender

---

[2] As noted above, in addition to alleging claims under Title VII, plaintiff alleges discrimination under the NYSHRL. The same standards governing Title VII discrimination claims generally apply to claims under the NYSHRL. *See Schiano*, 445 F.3d at 609; *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992). However, for the reasons discussed *infra*, the Court dismisses plaintiff's state law claims against the County (the only party who may be liable under Title VII) for failure to file a notice of claim, as required by New York law.

in the terms and conditions of her employment when they subjected her to various adverse employment actions, while not subjecting similarly-situated male counterparts to the same treatment. Defendants argue, regarding plaintiff's failure to promote claim, that a male colleague of plaintiff's who was similarly-situated in all material respects also did not receive the same promotion sought by plaintiff, thus undermining her allegation of improper gender discrimination and, further, that the remainder of the actions alleged do not constitute adverse actions for purposes of a workplace discrimination claim, as a matter of law. For the reasons set forth below, the Court disagrees with defendants and denies summary judgment in their favor on this claim.

### 1. Legal Standard

Because plaintiff presents no direct evidence of discriminatory treatment based on her gender, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to

"'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of New York, Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

Regarding the final prong of the *McDonnell Douglas* framework, it is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *accord Carter v. New Venture Gear, Inc.*, No. 07 Civ. 4672, 2009 WL 393611, at *2 (2d Cir. Feb. 18, 2009); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects" . . . varies somewhat from case to case and, as we

recognized in *Norville*, must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical . . . . The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40-41 (2d Cir. 2000) (citations and quotations omitted).

## 2. Application

As a threshold matter, defendants do not dispute that plaintiff has satisfied the first two prongs of the *McDonnell Douglas* analysis in this context – namely, that she belongs to a protected class of females and was qualified for the position(s) at issue. The Court turns to whether plaintiff has raised any genuine issues of material fact regarding (1) whether the actions taken against her were adverse for the purposes of a disparate treatment claim, and if so, (2) whether the adverse actions occurred under circumstances giving rise to an inference of discrimination.

### a. Adverse Employment Action

As an initial matter, a failure to promote certainly qualifies under the law as an "adverse employment action." *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Similarly, with respect to plaintiff's other alleged adverse employment actions – namely, repeated squad changes, her transfer to the Occupational Safety and Health Administration ("OSHA"), written reprimands in the form of Notices of Personnel Action ("NOPAs"), negative work evaluations, excessive scrutiny of her work, the assignment of menial tasks, verbal reprimands and harassment, and the failure to classify an accident that plaintiff was involved in as a "line of duty" accident (*See* Plaintiffs' Memorandum In Opposition, at 12-13),[3] – the Court is unable to conclude as a matter of law, given the disputed facts and evidence in the entire record, that a reasonable juror could not conclude that such acts, taken individually, do not constitute adverse employment actions under the circumstances of this case.

Employment actions that the Second Circuit has deemed sufficiently disadvantageous to constitute an adverse employment action include "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

---

[3] Defendants argue that plaintiff alleges other adverse employment actions, such as the assignment of an undesirable work shift, the lack of a flexible work schedule, and the undermining of her authority by defendants. (Defendants' Memorandum In Support, at 4.) However, plaintiff does not argue that these constitute adverse actions for the purposes of her disparate treatment claim, and the Court makes no determination as to these other actions.

responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams*, 368 F.3d at 128) (internal quotation marks omitted). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Little v. NBC,* 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); *see also, e.g., Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004) (holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action"); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) ("a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career"); *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir. 1999) (holding that transfer to a slightly different position with same salary and benefits under circumstances indicating intention to encourage resignation does constitute an adverse employment action); *de la Cruz v. New York City Human Res. Admin. Dep't of Social Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (finding that transfer from elite division could constitute adverse action); *Wright v. New York City Off-Track Betting Corp.*, No. 05 Civ. 9790, 2008 U.S. Dist. LEXIS 22567, at *10 (S.D.N.Y. Mar. 24, 2008) ("Comparatively poor assignments can constitute adverse employment actions.") (collecting cases); *Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec.15, 2004) ("The three remaining adverse actions alleged by plaintiff – deprivation of training, treatment of leave hours and assignment of menial 'make-work' tasks – appear to bear on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation. Accordingly, . . . I conclude that a jury could reasonably conclude that these events were adverse employment actions."); *Neratko v. Frank*, 31 F. Supp. 2d 270, 283 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action."). Under this case authority, construing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff's transfer to OSHA – which may involve materially worse duties and less overtime opportunities (Humphrey Aff. ¶ 15),[4] NOPAs – which can negatively affect professional growth and form the basis of further discipline (Humphrey Aff. ¶ 19),[5] negative work evaluations – which may be tied to monetary

---

[4] "[T]he Second Circuit has recognized that a transfer may, in certain circumstances, constitute an adverse employment action, even if requested by the plaintiff." *Carmellino v. District 20 of New York City Dep't. of Educ.*, No. 03 Civ 5942 (PKC), 2006 WL 2583019, at *39 (S.D.N.Y. Sept. 6, 2006) (citing *Richardson*, 180 F.3d at 444 n.4).

[5] The Court notes that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006). Here, however, there are disputed issues of material fact regarding the reasonableness of the defendants' issuances of the NOPAs at issue.

awards (Humphrey Aff. ¶ 27),[6] and the assignment of menial tasks, impacted plaintiff's compensation or opportunities for professional growth and/or resulted in objectively inferior working conditions, thereby constituting adverse employment actions. Thus, summary judgment on this ground is unwarranted.

The Court also declines to conclude, as a matter of law, that the alleged repeated squad changes, the failure to classify a car accident properly, and verbal reprimands/harassment cannot constitute adverse employment actions for the purposes of a disparate treatment claim. Although these actions are considerably less likely to constitute adverse employment actions, *see, e.g.*, *Castro v. New York City Bd. of Educ. Personnel*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions"), material facts are in dispute such that only a trier of fact can make the

appropriate determination, under the particular circumstances of this case, as to whether or not these actions adequately rise above "mere inconvenience" or "alteration of job responsibilities." *Nicholls v. Brookdale Univ. Hosp. and Med. Ctr.*, No. 05-4164, 205 Fed. Appx. 858, 861 (2d Cir. Oct. 24, 2006). For instance, in this case, plaintiff states that the squad changes made her job more difficult because, as an AMT Coordinator, she was forced to work with a new group of AMTs and AMT Supervisors, while still being held responsible for the work from her prior squad, which resulted in an increased workload. (Humphrey Aff. ¶ 26.) According to plaintiff, a change in squad also hampered her ability to rely on the professional relationships she had built with people working in her prior squad. (*Id.*) With respect to the car accident, plaintiff states that defendants' failure to properly classify the accident resulted in her having to hire a workers' compensation attorney and the improper removal of her sick time. (*Id.* at ¶ 28.)

Similarly, with respect to heightened scrutiny by an employer, the Court recognizes that "[t]o qualify as an adverse employment action, excessive scrutiny must be accompanied by unfavorable consequences." *Scafidi v. Baldwin Union Free Sch. Dist.*, 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003); *see also Hubbard v. Port. Auth. of New York and New Jersey*, No. 05 Civ. 4396 (PAC), 2008 WL 464694, at *12 (S.D.N.Y. Feb. 20, 2008) ("courts in this circuit have found that reprimands and . . . excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation") (internal quotation marks and citations omitted). The key question here, just like with respect to the other alleged adverse actions, is whether a materially adverse change resulted in the terms and conditions of

---

[6]  In *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004), the Second Circuit rejected a claim based on a negative performance evaluation where the plaintiff "offered no proof that th[e] evaluation had any effect on the terms and conditions of her employment." That case is distinguishable from the case at hand, however, because here there are disputed issues of fact as to whether these evaluations may have sufficiently impacted the terms and conditions of plaintiff's employment. *See Gelin v. Paulson*, No. 05 Civ. 5043, 234 Fed. Appx. 5, 2007 WL 1366325, at *1 (2d Cir. May 10, 2007) (assuming in its analysis that an evaluation could constitute an adverse employment action).

plaintiff's employment that was more disruptive than a mere inconvenience or alteration of job responsibilities. *See Feingold*, 366 F.3d at 152. With this in mind, the Court again finds that such a determination is premature on a motion for summary judgment in this case, where the impact of these alleged actions involve disputed issues of material fact.

Accordingly, given the evidence, and disputes surrounding such evidence, the Court cannot conclude as a matter of law that a reasonable juror could not conclude that the aforementioned acts constitute adverse employment actions. Thus, summary judgment on the disparate treatment claim, based on a lack of a purported adverse employment action, is denied.[7]

---

[7] In the alternative, plaintiff argues that defendants subjected her to an "atmosphere of adverse action" whereby the totality of the alleged actions could combine to satisfy the adverse action element. (Plaintiff's Memorandum In Opposition, at 13.) Because the Court has already found that summary judgment on the disparate treatment claims is unwarranted because a rational jury could find the showing of a requisite adverse employment action to be met based upon the evidence, the Court need not address whether such a theory of an "atmosphere of adverse action" may also support plaintiff's claims. *Cf. Hicks v. Rubin*, No. 00-6079, 6 Fed. Appx. 70, 73 (2d Cir. Mar. 20, 2001) (stating that the issue of whether alleged acts, including constant monitoring, a transfer, negative performance reviews, and assorted rebukes and suspensions collectively constituted an adverse employment action was not preserved for appellate review, but even if it were, the court would find that most of these actions did not constitute materially adverse employment actions).

b. Discriminatory Intent

With respect to the alleged adverse employment action of failure to promote, plaintiff asserts that in December of 2004, defendants failed to promote her to the position of Deputy Commanding Officer of the EAB because she was female, despite the availability of the position and her qualifications for the job, and instead promoted a lesser-qualified male candidate. Defendants argue that this discrimination claim fails as a matter of law because the undisputed facts demonstrate that they also failed to promote a similarly-situated male to the position – namely, Finnegan – and, thus, discriminatory intent cannot be inferred as a matter of law. However, the Court disagrees and finds that the plaintiff has sufficiently presented a genuine issue of material fact on this issue.

In early 2001, plaintiff was promoted to the position of AMT Supervisor, a promotion which required the passage of a civil service exam. (Def.'s 56.1 ¶¶ 9, 11.)[8] On April 23, 2003, after scoring a score of 90.00 on another civil service exam, plaintiff was promoted to the position of AMT Coordinator. (*Id.* ¶¶ 12-13.) Finnegan, who also scored 90.00 on the same exam, received the same promotion on that date. (*Id.* ¶¶ 14-16.) On December 10, 2004, Napoli was promoted to the position of Deputy Commanding Officer of the EAB. (*Id.* ¶ 18.) Plaintiff asserts that she was the more qualified candidate for the position, as she had outscored Napoli on the aforementioned civil service exam by ten

---

[8] Where only defendants' 56.1 Statement is cited, the facts are taken from defendants' 56.1 statement, and plaintiff does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

points, had completed more years of formal education, as well as Emergency Medical Services education, and possessed superior writing and organizational skills to those of Napoli. (Pl.'s 56.1 ¶ 18.) Finnegan also had achieved a higher score on the civil service exam than Napoli and was certified as a Registered Nurse, but was not promoted to the position, either. (Defs.' 56.1 ¶¶ 21-22.) Plaintiff submits, however, that she was also more qualified than Finnegan due to her education levels, and that they had served the same amount of years as AMT Supervisors and AMT Coordinators, respectively, despite the fact that he had seniority in the EAB. (Humphrey Aff. ¶ 23.)

The Court is unable to conclude that a reasonable jury, when viewing all of the facts and drawing all reasonable inferences in plaintiff's favor, could not find that "'an impermissible reason motivated the adverse action,'" namely, defendants' decision not to promote plaintiff in 2004. *Bickerstaff v. Vassar College*, 196 F.3d 435, 445 (2d Cir. 1999) (quoting *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 119-20 (2d Cir. 1997)). Because gender need not be the only factor considered by the defendants, there is sufficient evidence to preclude summary judgment on the question of whether it was nonetheless an impermissible factor that played a role in the decision at issue. Critically, just because Finnegan, who may or may not be determined by a jury to be similarly situated to plaintiff, also did not get promoted, does not defeat the possibility that the failure to promote plaintiff was driven, in whole or in part, by discriminatory intent. Indeed, although plaintiff does not have direct evidence of defendants' alleged discriminatory intent in not promoting her, she has set forth strong indirect evidence from which, if it is credited,

discriminatory intent may be inferred. This includes her testimony that when plaintiff was tied with Finnegan for the highest test score in 2003, Messina said, "if that c*** gets promoted, I will retire that same day," to which Napoli responded, "don't worry, the boss won't let them promote her, and if they do, we will keep her down." (Humphrey Dep., at 119-20, 142.) The allegedly undeserved negative evaluation that was delivered on the same day she was passed over for the position in 2004 is also evidence from which a reasonable juror could infer discriminatory intent. (Humphrey Dep., at 164-65.)

The other alleged adverse actions similarly evince issues of material fact with respect to discriminatory motive. Plaintiff alleges repeatedly that she was treated differently from her similarly situated male coworkers, and this kind of differential treatment is one way to show discriminatory motive indirectly. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 82 (2d Cir. 2001). Specifically, with respect to the various issuances of verbal reprimands and written NOPAs, plaintiff attempts to show that on various occasions, "she engaged in an act of 'comparable seriousness,' but was punished more severely than similarly situated coworkers based on an application of disciplinary rules or a code of conduct." *Carter*, 2009 WL 393611, at *2 (citing *Graham*, 230 F.3d at 40).

This Court's reluctance to grant summary judgment dismissing plaintiff's disparate treatment claims is further underscored by the NCEEO's findings, based on plaintiff's complaints, that the conduct of Messina, Napoli, and Fitzwilliam violated EEO policy. (Ostermann Dep., at 35-36.) In sum, the Court finds that plaintiff's evidence is sufficient to meet her *prima facie* case of

discrimination. Because defendants only argue that the actions were not adverse employment actions and have not advanced any legitimate business reasons for their actions in connection with this motion,[9] the Court also finds that plaintiff has carried her burden under *McDonnell Douglas* with respect to her disparate treatment claims, for the purposes of surviving a motion to dismiss.

## B. Hostile Work Environment

Plaintiff claims that defendants further subjected her to a hostile work environment. Defendants contend that summary judgment is warranted on this claim because, even if the jury credited plaintiff's evidence with respect to these allegations, no rational jury could find that the alleged conduct was sufficiently severe or pervasive to constitute a hostile work environment, or that the alleged hostile work environment was attributable to plaintiff's gender. As set forth below, the Court disagrees and concludes, after a careful review of the evidence in the record and drawing all reasonable inferences in plaintiff's favor, that there are genuine issues of fact that preclude summary judgment on whether

---

[9] In their Reply, defendants assert that "[w]ithout an itemized list of the actions which as a matter of law combine to produce an 'atmosphere' of adverse action, the Defendants cannot adequately proffer non-discriminatory reasons for each specific action." (Defendants' Reply In Further Support, at 7.) However, as analyzed *supra*, plaintiff did specify in her opposition papers the exact actions that are argued to be adverse employment actions, regardless of whether or not the "atmosphere" theory applies. Defendants have not set forth any nondiscriminatory or business reason with respect to any of the actions alleged by plaintiff, including the failure to promote plaintiff.

plaintiff was subjected to a hostile work environment based upon her gender.

### 1. Legal Standard

In order to prevail on a hostile work environment claim, a plaintiff must satisfy two elements: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (quoting *Richardson*, 180 F.3d at 436); *accord Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

With respect to the first element – which determines whether or not a hostile work environment can be established – , the Second Circuit has held that there is no "magic" threshold number of harassing incidents that are required, as a matter of law. *See Richardson*, 180 F.3d at 439. Rather, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (quoting *Harris*, 510 U.S. at 23); *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *Ruggieri*, 146 F. Supp. 2d at 217-18 (holding that a "collection of administrative mixups, minor annoyances, and perceived slights cannot be considered severe or pervasive harassment").

"Isolated instances of harassment ordinarily do not rise to this level." *Cruz*, 202 F.3d at 570; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" will not amount to discriminatory changes in the "terms and conditions of employment") (internal citations and quotations omitted); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (noting that "[i]solated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment") (citation omitted)*; Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding the alleged conduct non-actionable when the incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment")*; Brennan v. Met. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or occasional episodes do not warrant relief")*; Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that "to meet [her] burden, the plaintiff must show more than a few isolated incidents" and "evidence solely of sporadic" discrimination does not suffice) (internal quotations omitted); *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a "b****" and making sexual remarks over the course of her five and one-half years of employment insufficient to support a claim of discriminatory harassment); *Augustin v. Yale Club of New York City*, No. 03 Civ. 1924 (KMK), 2006 WL 2690289, at *22 (S.D.N.Y. Sept. 15, 2006) (finding that "four or five" comments over a five-year period insufficient to support a hostile work environment claim); *Mark v. Brookdale Univ. Hosp.*, No. 04 Civ. 2497 (JBW), 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) (finding two "alleged isolated remarks" by plaintiff's supervisor insufficiently "frequent and pervasive"); *Knight v. City of New York*, 303 F. Supp. 2d 485, 500 (S.D.N.Y. 2004) (denying hostile work environment claim where incidents were "too remote"); *Pagan v. New York State Div. of Parole*, No. 98 Civ. 5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (finding that two racially derogatory remarks by supervisor directly to plaintiff did "not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII") (citations omitted); *Upshur v. Dam*, No. 00 Civ. 2061 (DC), 2003 WL 135819, at *7-*8 (S.D.N.Y. Jan. 17, 2003) (finding one week of "patronizing and racist comments" by supervisor insufficient); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 533 (S.D.N.Y. 2002) (finding single remark by supervisor insufficient); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's use of racially derogatory slur to refer to defendant on four or more occasions did not alter conditions of employment significantly enough to implicate Title VII); *Francis v. Chem. Bank. Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (dismissing hostile work environment claim where plaintiff only alleged four incidents).

The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotations and citation marks omitted) (alteration in original). The point is that the conduct in

question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.*

Further, to succeed on a hostile work environment claim in the instant case, plaintiff must link the actions by defendants to gender. Although "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially-neutral incidents were in fact discriminatory. *Alfano*, 294 F.3d at 378; *see also Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (holding that "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Title VII) (citing *Brennan*, 192 F.3d at 318 ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.")).

## 2. Application

As summarized below, plaintiff has set forth sufficient evidence to clearly raise genuine issues of fact as to whether the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive as to alter the conditions of her work environment.

Specifically, in this case, plaintiff has provided evidence that, at the EAB, she was subjected to, *inter alia*, (1) gender-based epithets on a *weekly* basis, including derogatory and sexually inappropriate remarks made to women such as "b****," "c***," and "women do not belong in EAB" (Humphrey

Aff. ¶ 24), (2) pornography being viewed in the workplace (Humphrey Dep., at 196-97; Pl.'s 56.1 ¶¶ 47, 50), (3) men undressing in public work areas (Humphrey Aff. ¶ 8), and (4) physical threats to herself, her friends, and her dog. (*Id.* at ¶ 10.) She was also subjected to, over a period of years, allegedly undeserved negative work evaluations (*id.* at ¶¶ 16-17), the assignment of menial tasks (*id.* at ¶ 18), defendants' disregard of her complaints (*Id.* at ¶ 6), and the persistent undermining of her authority as a supervisor. (Humphrey Dep., at 113-19, 147, 193; Humphrey Aff. ¶ 10.) In addition, Humphrey has testified as to instances of discriminatory comments and actions made toward other women in the EAB, which she witnessed (Humphrey Dep., 80-85, 87-96), and some of which were corroborated. (Green Dep., at 17-18, 35.) This evidence, especially considered as a whole, is certainly sufficient to survive summary judgment on this issue.

Thus, the Court concludes that sufficient evidence exists to raise an issue of material fact regarding the first prong of the hostile work environment claim – that is, the existence of a hostile work environment. Plaintiff has proffered evidence of a pattern of gender-based discrimination and harassment by defendants in the EAB that a rational jury, if it credits plaintiff's evidence, could reasonably infer was attributable to gender and sufficiently altered the conditions of her employment.

## C. *Faragher/Ellerth* Affirmative Defense

With respect to the Title VII claims, the County contends that it is entitled to the *Faragher/Ellerth* affirmative defense as a matter of law and, thus, cannot be held vicariously liable for any alleged harassment by its employees towards plaintiff. As set

forth below, the Court disagrees and denies summary judgment on this ground as well.[10]

[10] To the extent that the defendants argue that the *Faragher/Ellerth* affirmative defense applies to plaintiff's retaliation claims against any direct acts or failures to act by the County, the Court disagrees:

> We note, nonetheless, that in granting summary judgment to the defendants, the district court engaged in no separate analysis of Finnerty's retaliation claims, stating only that "[b]ecause *Faragher-Ellerth* is a complete defense, Sadlier's motion to dismiss the sexual harassment claims is granted." We think that the court was mistaken. The *Faragher/Ellerth* affirmative defense is about the extent to which an employee's misbehavior may be attributed to his or her employer under principles of vicarious liability. It has no role in analyzing Sadlier's direct liability to Finnerty for its own actions with respect to the change of her employment position subsequent to her complaints of harassment, and her alleged subsequent termination. In analyzing the retaliation claims, the court should have employed the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Finnerty v. William H. Sadlier, Inc.*, 176 Fed. Appx. 158, 163 (2d Cir. Apr. 7, 2006) (citations omitted). Indeed, retaliation by the supervisor whose harassment is at issue would constitute a "tangible employment action" under *Faragher* and preclude the affirmative defense. *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 527 n.5

1. Legal Standard

As the Second Circuit has noted, "[t]he Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees." *Petrosino*, 385 F.3d at 225 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher*, 524 U.S. at 775). In instances where the harassment in the form of a hostile work environment is alleged to have been committed by non-supervisory co-workers, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino*, 385 F.3d at 225. However, in instances where the alleged harassment involves a supervisory employee, the court first looks to whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 765; *accord Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004). If the harassment resulted in a tangible employer action, "the employer will, *ipso facto*, be vicariously liable." *Mack*, 326 F.3d at 124; *accord Petrosino*, 385 F.3d at 225. Moreover, even "[i]n the absence of such tangible action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (b) 'the plaintiff employee unreasonably failed to take advantage of any

(S.D.N.Y. 2008) (citing *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101-02 (2d Cir. 2006)).

preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Petrosino,* 385 F.3d at 225 (quoting *Ellerth*, 524 U.S. at 765).

A defendant may attempt to satisfy the first element by "the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro,* 440 F.3d at 102. As to the second element, "proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Id.* Of course, if "the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Whidbee*, 223 F.3d 62, 73 (2d Cir. 2000) (citation omitted).

## 2. Application

As noted *supra*, assuming that no tangible employment action is alleged,[11] the County is vicariously liable for any alleged harassment by its employees unless it can show (1) that it exercised reasonable care to prevent or correct the harassing behavior, and (2) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided. *See Ellerth,* 524 U.S. at 745. There are disputed issues of material fact on both of these requirements, making summary judgment inappropriate.

---

[11] Plaintiff does not argue in her opposition papers that a tangible employment action occurred. In any event, the Court finds that defendants cannot avail themselves of the *Faragher/Ellerth* affirmative defense at this stage, even assuming that no tangible employment action resulted from defendants' alleged actions.

With respect to the first prong of the *Faragher/Ellerth* affirmative defense, "[a]lthough not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Caridad,* 191 F.3d at 295. Here, plaintiff acknowledges receipt of the NCPD EEO policies via the department manual. (Def.'s 56.1 ¶ 60.)

Although the Court recognizes that summary judgment for the employer is appropriate in cases where the undisputed facts demonstrate that the employer unquestionably took reasonable steps to prevent and remedy harassment, this case is not one of them. A review of the record reveals disputed issues of material fact relating to the training on, and enforcement of, the County's anti-discrimination policy, as well as whether the County took sufficient action to promptly correct the discrimination.

In particular, with respect to prevention of the discrimination, it is disputed whether the County properly trained its employees with respect to the filing of complaints with the NCEEO. (Pl.'s 56.1 ¶¶ 59, 69.) There are also disputed issues of material fact regarding the County's corrective measures. Plaintiff alleges that Garside, after hearing plaintiff's complaint, stated that her complaints were "a can of worms I am not willing to open" and failed to take corrective action. (Humphrey Aff. ¶ 6.) After plaintiff filed her formal complaint with the NCEEO, defendants allegedly continued to harass plaintiff. This included Napoli allegedly telling plaintiff's subordinates that they did not have to listen to her, staring at plaintiff, and making offensive gestures at her. (*Id.* at ¶ 13.) Thus, viewing this evidence in the light most favorable to plaintiff, a rational jury could conclude that

the County failed to take appropriate preventive or remedial action with respect to plaintiff's discrimination. Even though defendants set forth evidence that Fitzwilliam sent an immediate e-mail to all EAB supervisors regarding the inappropriate nature of pornography and that a command special order was issued directing employees to only undress in restrooms (Defendants' Memorandum In Support, at 15), these kinds of conflicting evidence are to be properly weighed by a jury.

Although the aforementioned issues of material fact would suffice to preclude summary judgment, the Court further determines that summary judgment is similarly unwarranted on the second prong of *Faragher/Ellerth* – namely, whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities. With respect to this second prong, it is undisputed that plaintiff complained verbally to Garside and then formally filed a complaint with the NCEEO. Thus, at a minimum, there is an issue of material fact as to whether plaintiff sufficiently took advantage of the corrective opportunities available. To the extent that plaintiff did not make other complaints, she argues that such a failure was due to a lack of awareness about other procedures, which in turn is an indication of the County's lack of training about the proper means to handle discriminatory complaints. Moreover, plaintiff had no obligation to take any further action than that delineated by the policy in question. On this issue, the Second Circuit has expounded:

> [T]he plaintiff's failure to report to other company personnel the incidents of harassment that she reported to [a supervisor] is irrelevant to the adequacy of [the employer's] response. [The employer] argues that a

harassed plaintiff has other options under its policy because the misconduct may be reported not only to the employee's "department supervisor," but also to her "manager, Human Resources representative, or to the Corporate Equal Employment Opportunity Manager." Implicit in this argument is the notion that the plaintiff has an affirmative duty to bring her allegations to the company's attention in more than one way when she believes the company's response to her harassment claim is inadequate. We reject this attempt to shift the company's failure to respond onto the plaintiff's shoulders. When a plaintiff reports harassing misconduct in accordance with company policy, she is under no duty to report it a second time before the company is charged with knowledge of it.

*Distasio,* 157 F.3d at 65. Although the County argues that under the policy, plaintiff was required to make a formal complaint with the NCPD or a superior officer (Defendants' Memorandum of Law In Support, at 15), the Court cannot determine that, as a matter of law, her failure to do so prior to filing her NCEEO complaint was unreasonable. Instead, that is another consideration for the jury.

As discussed *supra*, summary judgment on the existence of a hostile work environment is unwarranted. Disputed issues of material fact also prevent the application of the *Faragher/Ellerth* defense as a matter of law. Accordingly, summary judgment on the hostile work environment claim is denied.

## D. Retaliation

Plaintiff further claims that the defendants subjected her to a hostile work environment, as well as various discrete adverse employment actions, in retaliation for her participation in protected activity, namely, for complaining about the discrimination to Garside and for filing a formal complaint of discrimination with the NCEEO. (Plaintiff's Memorandum In Opposition, at 18.) Defendants argue that summary judgment is appropriate with respect to this claim, because plaintiff cannot demonstrate a causal connection between her complaints and the adverse actions as a matter of law. (Defendants' Memorandum In Support, at 12.) However, as set forth below, the Court concludes that there are genuine issues of material fact on the retaliation claim that preclude summary judgment.

### 1. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas*. 411 U.S. at 792. First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In

determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

Furthermore, under *Richardson v. New York Dep't of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the Second Circuit held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case." *Id.* at 446; *see also McWhite v. New York City Hous. Auth.*, No. 05 Civ. 0991 (NG) (LB), 2008 WL 1699446, at *11

(E.D.N.Y. Apr. 10, 2008) (applying *Richardson* to a retaliatory hostile work environment claim); *Brown v. New York State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 421-22 (W.D.N.Y. 2008) (denying summary judgment on Title VII retaliation claim in part on plaintiff's co-workers' alleged retaliatory acts and citing *Richardson*); *Nugent v. The St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109 (JCF), 2007 WL 1149979, at *13 (Apr. 18, 2007) (considering a retaliatory hostile work environment claim).

## 2. Application

In the instant action, plaintiff complained about her discrimination twice, first, to Chief Garside verbally and, second, by filing a formal written complaint of discrimination with the County. According to plaintiff, after the first complaint to Garside, plaintiff alleges that she was subjected to overscrutinization of her work, verbal reprimands, and a NOPA. (Plaintiff's Memorandum In Support, at 18-19.) After filing her complaint with the NCEEO, plaintiff was issued another NOPA, threatened and harassed by defendants, denied classification of an accident as one in a "line of duty," and ultimately forced to transfer to OSHA. (*Id.*) Defendants do not argue that these actions do not constitute adverse actions for the purposes of retaliation. In any event, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that these actions could "dissuade[] a reasonable worker from making or supporting" a complaint. *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68.

Instead, defendants argue that plaintiff cannot make out a *prima facie* case of retaliation here because she cannot show a causal connection between the protected activity and the alleged retaliation. The Court disagrees.

In Title VII retaliation claims, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

First, the Court finds that plaintiff has sufficiently set forth evidence of *direct* evidence of retaliatory animus. Specifically, plaintiff claims that after making her complaints, she "came across a Microsoft Word document entitled something to the effect of 'Ways we can get Humphrey.'" (Humphrey Aff. ¶ 11.) This was allegedly a document that Finnegan kept, containing a list of about ten to twelve things that plaintiff had done that were all minor but intended to subject her to further discipline. (*Id.*) In this vein, Humphrey states that Napoli also asked other employees about plaintiff in an effort to find other reasons to subject her to discipline. (*Id.*)

Even though the Court could end its analysis of this issue there, it is apparent that there is also indirect evidence, which could support a reasonable inference of retaliation. Even assuming *arguendo* that there is no direct evidence of such animus, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). The temporal proximity between plaintiff's complaints and these alleged acts by defendants is not too

attenuated to deny a causal connection as a matter of law. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . . [Alleged retaliatory a]ction taken (as here) 20 months later suggests, by itself, no causality at all.") (citations omitted); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and the adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"). Here, plaintiff received a NOPA days after filing her NCEEO complaint. (Pl.'s 56.1 ¶ 46.) Although defendants argue that this NOPA referenced activity that took place prior to plaintiff's filing of her complaint (Defendants' Memorandum In Support, at 12-13), plaintiff arues that she did not actually receive the NOPA until after she filed that complaint. (*Id.*) Within eight months of filing her complaint, plaintiff had requested a transfer out of EAB because "nothing was being done to remedy the situation within EAB or address [her] complaints." (Humphrey Aff. ¶ 10.)

Also, as evidence of retaliatory intent, plaintiff offers evidence that she was treated differently than similarly situated co-workers who did not engage in protected activity. She testified that she was under "intense scrutiny" and singled out in receiving NOPAs following her complaints. (Humphrey Aff. ¶¶ 10, 12-13; Pl.'s 56.1 ¶ 56.) Plaintiff further attempts to demonstrate retaliatory intent with evidence of a change in the employer's behavior toward her. Here, she argues that NOPAs were issued to her following both complaints for conduct that she had previously engaged in, prior to her complaints, without facing discipline. (Pl.'s 56.1 ¶ 46.) She also attests that, following her complaints, she was ordered to visit scenes when no police vehicle was available and left with the "worst vehicles" for her use. (Humphrey Aff. ¶ 12.)

Finally, plaintiff clearly alleges that she was the subject of physical threats to herself, her friends and coworkers, and her dog following her complaints. (Humphrey Aff. ¶ 10; Humphrey Dep., at 368, 371, 386-87.) In one specific instance, plaintiff testified that her union representative and friend, Ron Kahl, was harassed by Finnegan and Napoli, who allegedly drew a picture of a rat and cheese on a blackboard and stated to Kahl that "his career would go nowhere if he remain[ed] friends" with plaintiff. (Humphrey Dep., at 386.) According to plaintiff, as a result of these retaliatory actions on the part of the defendants, plaintiff requested to leave EAB and transferred to OSHA. (Humphrey Dep., at 257-61.)

In sum, viewing the evidence most favorably to plaintiff, there is more than ample evidence from which a reasonable jury could find that defendants acted in a retaliatory manner. Accordingly, the Court rejects defendants' contention that plaintiff has failed to make out a *prima facie* case of retaliatory discrimination required by *McDonnell Douglas* because there is no evidence to support a causal connection between the protected activity and the alleged retaliation. Since defendants have not articulated a legitimate, nondiscriminatory reason for these alleged adverse actions in retaliation, their motion for summary

judgment as to plaintiff's retaliation claim is denied.

Moreover, plaintiff's retaliation claim may also proceed as a retaliatory hostile work environment claim. In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct. *See, e.g., Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile work workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."); *Faison v. Leonard*, No. 08 Civ. 2192 (PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (same); *McWhite*, 2008 WL 1699446, at *13; *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable. The hostile work environment doctrine, as developed in the anti-discrimination jurisprudence of Title VII, embodies that prerequisite.") (citation omitted); *Rigau v. Pfizer Caribbean Corp.*, 525 F. Supp. 2d 272, 287 (D.P.R. 2007) (same). For the reasons discussed *supra*, plaintiff has satisfied the same standard that governs hostile workplace claims by showing that the incidents of harassment *following her complaints* were sufficiently continuous and concerted to have altered the conditions of her employment. Plaintiff can furthermore causally connect, directly or indirectly, these complaints to the exacerbation of the workplace hostility that was the initial subject of her complaint. In short, because plaintiff has sufficiently set forth evidence from which

a reasonably jury could find that a hostile work environment existed and also that a causal connection existed between this purported hostile work environment (or the alleged adverse action) and her complaints, summary judgment on any claim of retaliation is unwarranted.[12]

## E. Section 1983

Plaintiff also asserts a cause of action under 42 U.S.C. § 1983 based upon the alleged discriminatory conduct by defendants. Specifically, plaintiff alleges that her constitutional rights under the Equal Protection Clause were violated by the defendants, including the individual defendants in their individual capacities. For

---

[12] As one court has noted, there is a question as to whether, after the Supreme Court's decision in *Burlington Northern*, the standard for showing a retaliatory hostile work environment is less than the standard for a traditional hostile work environment claim because a plaintiff need only show a "materially adverse action" for a retaliation claim, rather than an "adverse employment action." *See Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03 Civ. 2411 (DGT), 2007 WL 1011325, at *9 (E.D.N.Y. Mar. 30, 2007) ("It is . . . unclear whether the Supreme Court's decision in *Burlington Northern*, 126 S.Ct. 2405, altered the standard for retaliatory hostile work environment claims.") In other words, if such a difference exists, a plaintiff could theoretically be subject to materially adverse actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 U.S. at 77 (quotations and citations omitted), but not "sufficiently severe or pervasive," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (U.S. 1986), to alter the conditions of plaintiff's employment. Of course, since plaintiff has already overcome summary judgment under the potentially higher standard applicable to hostile work environment claims, it is immaterial for the purposes of this motion which standard applies.

the reasons discussed below and *supra* in connection with plaintiff's claim for discrimination under Title VII, the Court denies defendants' motion for summary judgment on this claim.[13]

### 1. Legal Standard

Under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"'A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'" *Patterson*, 375 F.3d at 225 (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994) and citing *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)). In connection with her claim, plaintiff asserts violations of her rights under the Equal Protection Clause of the Fourteenth Amendment, which

provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against her on the basis of her membership in a protected class. *Linder v. City of New York*, 263 F. Supp. 2d 585, 592 (E.D.N.Y. 2003) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

Although "Title VII claims are not cognizable against individuals, individuals may be held liable under . . . [§ ] 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment." *Patterson*, 375 F.3d at 226 (citing *Hayut v. State Univ. of New York*, 352 F.3d 733, 753-54 (2d Cir. 2003)) (additional citation omitted). Furthermore, a plaintiff must demonstrate a defendant's personal involvement in the alleged discrimination in order to establish a claim against such defendant in his individual capacity. *Id.* at 229.

To establish a hostile-work environment claim under Section 1983, a plaintiff must demonstrate that (1) she was intentionally harassed; (2) the harassment was based on her race or gender; (3) such actions were taken under color of state law; and (4) the harassment was so severe as to render the work environment hostile to her. *Id.* (citing *Cohen v. Litt,* 906 F. Supp. 957, 964 (S.D.N.Y. 1995)).

### 2. Application

#### a. Individual Defendants

For the reasons set forth at length *supra*, in relation to plaintiff's Title VII claims, the Court also finds that plaintiff has sufficiently set forth evidence that precludes summary

---

[13] To the extent defendants move under Section 1983 on the same grounds as under Title VII in connection with their assertion that there is insufficient evidence of discrimination to survive summary judgment, the motion is denied for the reasons set forth *supra* with respect to Title VII.

judgment on a hostile work environment claim under Section 1983; the Court also finds that, as required by Section 1983, plaintiff has sufficiently presented evidence from which a reasonable juror could conclude that the alleged acts by defendants were intentional. *See, e.g., Hayut*, 352 F.3d at 744 ("Section 1983 sexual harassment claims that are based on a 'hostile environment' theory, . . . are governed by traditional Title VII 'hostile environment' jurisprudence.") (citations omitted); *Patterson*, 375 F.3d at 226 (regarding additional "intentionality" requirement of Section 1983). In light of the law permitting Section 1983 claims against individuals who are alleged to be personally involved in the discriminatory acts at issue, the Court declines to dismiss the Section 1983 claims against the individual defendants.

Nor are the individual defendants entitled to qualified immunity with respect to the Section 1983 claim. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The Second Circuit has held that "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citations omitted). Here, if the factual disputes are all resolved in plaintiff's favor and the jury concludes that the individual defendants intentionally discriminated against her and created a hostile work environment under Section 1983 in the manner described by plaintiff, qualified immunity would not protect the individual defendants. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 130 (2d Cir. 2004) ("We find that the two remaining individual defendants in this case are not entitled to qualified immunity. It was eminently clear by 2001, when the alleged discrimination took place, both that individuals have a constitutional right to be free from sex discrimination, and that adverse actions taken on the basis of gender stereotypes can constitute sex discrimination."); *see generally Iqbal v. Hasty,* 490 F.3d 143, 174 (2d Cir. 2007) (concluding that plaintiff's racial, ethnic, and religious discrimination claims could not be dismissed on qualified immunity grounds given allegations in complaint). Therefore, summary judgment with respect to the Section 1983 claims against the individual defendants is unwarranted.

## B. County Defendant

The Court further denies summary judgment on the Section 1983 claim against the County. In drawing this conclusion, the Court rejects defendants' contention that, based upon the evidence in this case, plaintiff cannot establish a *Monell* claim as a matter of law. It is true that the Supreme Court has expressly rejected liability pursuant to a theory of *respondeat superior* for purposes of § 1983 in *Monell. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ( "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, "[a] municipality will not be held liable under § 1983 unless plaintiffs can demonstrate that the allegedly unconstitutional action of an individual law

enforcement official was taken pursuant to a policy or custom officially adopted and promulgated by that [municipality's] officers." *Abreu v. City of New York*, No. 04 Civ. 1721, 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quotation marks omitted) (citing *Monell*, 436 U.S. at 690). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives" by the municipality's lawmakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). An individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). In particular, "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). The plaintiff in a Section 1983 claim bears the burden of establishing municipal liability. *See Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987).

However, plaintiff does not rely on a theory of *respondeat superior* to pursue her claim against the County. Rather, she has sufficiently alleged that the discrimination she faced was due, at least in part, to the County's inadequate training of its employees. (Pl.'s 56.1 ¶ 59.) The Court cannot conclude as a matter of law, based on the evidence before it (and viewing all facts and drawing all reasonable inferences in favor of the plaintiff), that plaintiff is unable to show that the challenged acts were performed pursuant to a municipal policy or custom. Indeed, "[t]he

policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). In light of this authority and the disputed facts related to this issue, the Court also declines to grant summary judgment dismissing plaintiff's Section 1983 claim against the County.

## F. NYSHRL

### 1. County Defendant

Finally, defendants argue that plaintiff's state claims against the County under the NYHRL are precluded by her failure to file a timely notice of claim. The Court agrees and grants defendants' motion for summary judgment with respect to this claim against the County.

Under New York General Municipal Law § 50-e ("Section 50-e"), a plaintiff must file a notice of claim against a county or its employees within ninety days after such claim arises. In this case, it is undisputed that plaintiff has yet to file a notice of claim upon defendants.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) ("Absent a showing of such a Notice of

Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citation omitted).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding employment discrimination claim that "seeks the enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (E.D.N.Y. 1997) (determining that claim was brought merely to enforce a private right and not to vindicate a public interest where "[b]y its terms, plaintiff's complaint is limited to redressing plaintiff's individual injury.").

Plaintiff attempts to rescue her state law claims by arguing that the filing of a notice of claim was unnecessary because defendant County had knowledge of Plaintiff's claims. (Plaintiff's Memorandum In Opposition, at 22.) Plaintiff relies upon several cases in support of this proposition, including *Tatum v. City of New York*, 555 N.Y.S.2d 158, 159 (N.Y. App. Div. 1990), *Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 36 (E.D.N.Y. 2005), and *Schnieder v. Vill. of Great Neck Estates*, 799 N.Y.S. 2d 164 (N.Y. Sup. Ct. 2004). However, these cases are entirely inapposite, and do not indicate that the notice of claim requirement may be waived where a defendant has otherwise received notice of plaintiff's intended claims. Rather, these cases discuss defendant's knowledge of the facts relating to a plaintiff's claims in the context of the factors to be considered by a court in granting leave to serve a late notice of claim. For reasons that are discussed below, this Court declines to grant plaintiff's request that, in the event the Court finds the notice of claim requirement unsatisfied, she be granted leave to serve a late notice of claim.

Section 50-e(5) provides that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. However, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application. In *Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999), the court noted that the "appropriate state court may extend the time to file a notice of claim" under Section 50-e, but declined to decide "whether the federal court [had] such jurisdiction." This Court agrees with the overwhelming weight of authority among district courts in the Second Circuit and finds that Section 50-e(7) permits only certain state courts – "the supreme court or . . . the county court" in certain counties – to consider and to grant an application for an extension of time in this context. *Henneberger*, 465 F. Supp. 2d at 200 (quoting N.Y. Gen. Mun. Law § 50-e(7) and collecting cases); *Brown*, 717 F. Supp. at 258-61 ("[U]ntil the state legislature amends [Section 50-e(7) ] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.") (collecting cases). Therefore, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiff's state law claims against the

County defendant timely filed or to grant an extension of time to file.

Even if this Court had jurisdiction to grant plaintiff leave to file a late notice of claim, the Court would decline to do so on the merits. Plaintiff argues that, through her complaints, defendants acquired actual knowledge of the essential facts of plaintiff's claims in a timely fashion. First, plaintiff's oral statements to Garside were never in writing, and there is no indication that all of the defendants were aware of her allegations with any particular detail as a result of that complaint. Second, even if this Court were to take into account plaintiff's subsequent filing of a complaint with the NCEEO, it is instructive that "where a plaintiff relies upon an EEOC Charge to provide notice of her claim, she does so at her own risk." *Ximines v. George Wingate High Sch.,* No. 05 Civ. 1214 (ILG), 2006 WL 2086483, at *11 (E.D.N.Y. July 25, 2006) (citing *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 456 (S.D.N.Y. 2001) (holding that an EEOC complaint filed after the three-month statutory period for filing a notice of claim is invalid for such purpose)). Moreover, plaintiff also fails to provide any explanation for her failure to file a timely notice of claim. Accordingly, the Court would decline to grant plaintiff leave to file a late notice of claim. Thus, because plaintiff failed to serve a timely notice of claim on the County, all of her state law claims against the County are dismissed without prejudice. *See Gaffney,* 182 F. Supp. 2d at 278 (dismissing NYHRL claims for failure to serve timely notice of claim).

### 2. Individual Defendants

However, with regard to plaintiff's state claims against the individual defendants in their individual capacities, the failure to file a timely notice of claim is not a bar to such actions. *See, e.g., Walker v. City of New York*, No. 98 Civ. 2695 (SJ), 2002 U.S. Dist. LEXIS 18327, at *27 (E.D.N.Y. July 26, 2002) (denying summary judgment for failure to file a notice of claim to the extent that defendant was being sued in his individual capacity); *cf. Kalpin v. Cunningham,* 401 N.Y.S.2d 659 (N.Y. App. Div. 1978) (dismissing for failure to file a notice of claim where "[t]here was nothing in the . . . complaint that could be construed as an allegation against defendant[s] in [their] individual capacit[ies]"). Therefore, plaintiff's cause of action against the individual defendants for aiding, abetting, inciting, compelling and/or coercing sexual harassment, in violation of Section 296(6) of the New York Executive Law, survives summary judgment.

Section 296(6) states that it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so." N.Y. Exec. Law § 296(6). In *Patrowich v. Chemical* Bank, 63 N.Y.2d 541, 542 (N.Y. 1984), the New York Court of Appeals held than an employee may not be sued individually under this section "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.*

However, the Second Circuit distinguished *Patrowich* in cases where a defendant actually participates in the conduct giving rise to a discrimination claim, stating that such a defendant may be held personally liable under the statute. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington*, 524 U.S. at 754, and *Faragher*, 524 U.S. at 807; *accord Steadman v. Sinclair*, 223 A.D.2d 392, 393 (N.Y. App. Div. 1996) ("Defendant's counterclaims . . . seeking to hold plaintiffs individually liable as aiders and abettors of such retaliation under Executive Law § 296 (6), have support in our recent case law holding that 'an individual may be held liable for aiding discriminatory conduct'")

(quoting *Peck v. Sony Music Corp.*, 221 A.D.2d 157, 158 (N.Y. App. Div. 1995) and citing *Tomka*, 66 F.3d at 1317); *Peck v. Sony Music Corp.*, 221 A.D.2d at 158 ("Executive Law § 296 (6) and (7) provide that an individual may be held liable for aiding and abetting discriminatory conduct. [*Patrowich v Chemical Bank*] is not a bar to maintenance of the action."). *But see Trovato v. Air Express Int'l*, 238 A.D.2d 333, 334 (N.Y. App. Div. 1997). This Court must follow Second Circuit precedent and apply *Tomka*. *See, e.g., Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 425 (E.D.N.Y. 2008); *Huaman v. Am. Airlines, Inc.*, No. 00 Civ. 6336 (FB) (MDG), 2005 WL 2413189, at *4 (E.D.N.Y. Sept. 29, 2005); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1161 (E.D.N.Y. 2003); *Hasbrouck v. Bankamerica Hous. Servs., Inc.*, 105 F. Supp. 2d 31, 39 (N.D.N.Y. 2003); *McCoy v. City of New York*, 131 F. Supp. 2d 363, 371 (E.D.N.Y. 2001); *Turner v. Olympic Reg'l Dev. Auth.*, 89 F. Supp. 2d 241, 243 (N.D.N.Y. 2000); *Arena v. Agip USA Inc.*, No. 95 Civ. 1529 (WHP), 2000 WL 264312, at *3 (S.D.N.Y. Mar. 8, 2000). Accordingly, because there is sufficient evidence presented (when viewing the evidence most favorably to plaintiff) that the individual defendants personally participated in the discriminatory or retaliatory conduct to support an aiding-and-abetting theory of individual liability under the NYSHRL, the Court denies defendants' summary judgment motion with respect to this cause of action.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment with respect to plaintiff's claims against the County arising under the NYSHRL and the Section 1983 claims against the individual defendants in their official capacities. The Court denies the motion with respect to all other claims.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2009
        Central Islip, NY

* * *

The attorneys for plaintiff are Rick Ostrove and Thomas Ricotta of Leeds, Morelli & Brown, P.C., One Old County Road, Suite 347, Carle Place, N.Y. 11514. The attorneys for defendants are Karen Schmidt and Donna A. Napolitano of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501.